Filed 6/26/13  P. v. Thompson CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| THE PEOPLE, | C071122 |
| Plaintiff and Respondent, | (Super. Ct. No. 62105846) |
| v. | |
| SHARON LYNN THOMPSON, | |
| Defendant and Appellant. | |

A jury found defendant Sharon Lynn Thompson guilty of second degree burglary and possession of a methamphetamine pipe.  (Pen. Code, § 459; Health & Saf. Code, § 11364.)  Defendant timely appeals from an order suspending imposition of sentence and granting probation.

On appeal, defendant contends--and the People concede--that the trial court erred by not instructing the jury on the mistake-of-fact defense.  We find any error harmless.  Defendant also contends--and the People again concede--that the trial court violated the prohibition against ex post facto laws when it imposed a restitution fine of $240.  We disagree with the parties, as we explain, and shall affirm.

1

On April 17, 2011, defendant entered a Nordstrom store in Roseville and returned jewelry she acquired without payment while in the store. She had a methamphetamine pipe in her purse.

A store detective testified that after he received a call from a cashier about defendant's effort to return merchandise, he began tracking defendant on security cameras, and the jury was shown a video exhibit depicting defendant's movements. Defendant tried but failed to return perfume and earrings that Nordstrom does not sell. She then picked up two pairs of different earrings from a table, walked away, then picked up a third pair of earrings, and returned two of those pairs, receiving cash for them. Store security then stopped defendant, but she resisted and had to be handcuffed. She had $17.32 in her purse, which was returned to the store. She claimed she had entered the store with four pairs of earrings. Nordstrom's policy "for over a hundred years" has been to accept returns without proof of purchase, to accommodate customers.

A Roseville police officer testified defendant admitted to him that "she came to Nordstrom's to take items and immediately return them for cash." She said she knew Nordstrom's policy was to accept returns without receipts, "so she would take items from the rack and go right to the register and try to return them for money." She was cooperative until she learned she was going to jail, then began pleading to be released and claimed she had high blood pressure and that her arm might be broken. The officer took her to the hospital, where she also claimed she had been hit in the head, but she had no visible injuries.

Defendant testified she had received the perfume and two pairs of earrings as gifts, and went to Nordstrom to exchange them because she thought that is where they came from. She first went to the perfume department, but was told she could not exchange the perfume because it lacked a sticker, and she was told to take the earrings to another department to determine if they came from Nordstrom. On her way, she found some

earrings she wanted, and went to a cashier to make the exchange, telling the cashier she was not sure whether or not the earrings she had brought had been purchased at Nordstrom. The cashier told her she could refund the money for one pair. Defendant testified she thought she received money because the earrings she brought were more expensive, and thought the money reflected the difference in value between the ones she brought and the ones she wanted in exchange. She was confused about what the cashier had done. She testified that when she was stopped and accused of theft, she suggested returning to the cashier, but when she turned, she was slammed to the ground by security officers, causing a knot in her head, bruising to her knees, and pain in her arm. She first testified she had never seen the pipe in her purse, but she had been the live-in caregiver for a young man with mental problems who was a drug user. She later testified she had seen the young man and his girlfriend using such a pipe. She denied telling the police officer that she entered Nordstrom with the intent to steal or had brought four pairs of earrings with her into the store

## DISCUSSION

### I

### *Failure to Properly Instruct the Jury*

Defendant contends the trial court had a duty to give a mistake-of-fact instruction, despite the lack of a request therefor. (See *People v. Barton* (1995) 12 Cal.4th 186, 195.) The People concede the point, but contend the error was harmless. We agree that any error was harmless on this record, and therefore need not address the trial court's instructional duty.[1]

---

[1] Recently another court has concluded there is no duty to instruct on the mistake-of-fact defense absent request. (*People v. Lawson* (2013) 215 Cal.App.4th 108, 117 [petn. for rev. pending, S210732].)

## A. The Applicable Instruction

A person is not guilty of a crime "who committed the act or made the omission charged under an ignorance or mistake of fact, which disproves any criminal intent." (Pen. Code, § 26, subd. Three.) "The effect of mistake . . . is to negate the element of intent." (*People v. Scott* (1983) 146 Cal.App.3d 823, 833.) Thus, as defendant argues, if she acted under the mistaken belief that she was returning or exchanging gifts purchased at Nordstrom, she lacked the intent to steal.

## B. Harmless Error

In this case, any error was harmless under *any* standard of review, because the defense of lack of intent to steal was tendered to the jury by other instructions and by the closing arguments to the jury.[2]

As relevant to the burglary charge, the jury was instructed that the People had to prove beyond a reasonable doubt that defendant entered the store with the "specific intent" to commit a theft therein, and that her intent could be proven by circumstantial evidence. Theft by larceny was also defined.

As relevant to the burglary charge, the People argued the police officer told the truth when he testified defendant admitted entering the store with the intent to steal, and defendant lied when she denied telling the officer about her plan, and that her effort to evade arrest evidenced her consciousness of guilt. Defense counsel argued defendant did not enter the store with the intent to steal, but was confused; further, any intent to steal was formed after she failed to "exchange things she believed were from that store" and therefore burglary was not proven. Thus, the instructions, evidence, and arguments

_____

[2] Defendant's claim that any error deprived her of a defense in violation of federal due process principles is not persuasive, because, as we explain *post*, the issue of her intent was presented to the jury through other instructions.

4

presented the jury with a clear factual question: When defendant entered the store, did she intend to return or exchange items given to her that she thought came from Nordstrom, or did she enter with the intent to acquire items while in the store and then try to obtain money for them?

A mistake-of-fact instruction would not have changed the jury's resolution of this factual question about defendant's intent, because "'the factual question posed by the omitted instruction was necessarily resolved adversely to the defendant under other, properly given instructions." (*People v. Wright* (2006) 40 Cal.4th 81, 98; see *People v. Chaffin* (2009) 173 Cal.App.4th 1348, 1353.)

Defendant contends that the instructions given did not explain that her purported mistake did not have to be *objectively reasonable*. (See *People v. Russell* (2006) 144 Cal.App.4th 1415, 1425-1426.) This point is not significant. The instructions given precluded a burglary conviction unless the jury found that defendant intended to steal before she entered the store. If the jury had any reasonable doubt about whether defendant was merely mistaken, and did not possess the requisite intent, it was instructed to acquit. Therefore, the issue tendered by the omitted instruction--the mistake-of-fact defense--was resolved adversely to defendant by other instructions, notwithstanding that the jury was not advised that her mistake could be objectively unreasonable, if honestly held. Any instructional error was harmless.

## II

### *The Restitution Fine*

Among the conditions of probation, the trial court imposed a $240 felony restitution fine under Penal Code section 1202.4, subdivision (b), which it characterized as "the minimum state restitution fund . . . fine of $240." At the time of the burglary, April 17, 2011, that statute provided for a fine between $200 and $10,000, "at the discretion of the court and commensurate with the seriousness of the offense." (Stats.

5

2010, ch. 351, § 9.) But effective January 1, 2012, before sentencing, the minimum fine was increased to $240. (Stats. 2011, ch. 358, § 1.)

The ex post facto clauses of both the federal and state constitutions prohibit any statute which makes more burdensome the punishment for a crime after its commission. (*Tapia v. Superior Court* (1991) 53 Cal.3d 282, 294, 295.) "A restitution fine qualifies as punishment for purposes of the prohibition against ex post facto laws." (*People v. Saelee* (1995) 35 Cal.App.4th 27, 30.)

Thus defendant was actually *eligible* for the earlier minimum fine of $200, given that his offense date was before its raise to $240. Further, it appears from the trial court's remarks that it would have imposed a $200 fine had defendant's eligibility been brought to its attention. There was, however, no objection to the $240 fine below.

Although defendant does not address forfeiture in his briefing, the People in conceding error characterize the $240 fine as an unauthorized sentence and opine that defendant may therefore claim error for the first time on appeal. We disagree.

"Although the cases are varied, a sentence is generally 'unauthorized' where it could not lawfully be imposed under any circumstance in the particular case. Appellate courts are willing to intervene in the first instance because such error is 'clear and correctable' independent of any factual issues presented by the record at sentencing." (*People v. Scott* (1994) 9 Cal.4th 331, 354 (*Scott*).) The $240 fine could be lawfully imposed in April, 2011 and was therefore not unauthorized when imposed in April, 2012.

Because the fine was not unauthorized, defendant forfeited any claim that the trial court mistakenly imposed more than the minimum fine by not raising it at the sentencing hearing. "Although the court is required to impose sentence in a lawful manner, counsel is charged with understanding, advocating, and clarifying permissible sentencing choices at the hearing. Routine defects in the court's statement of reasons are easily prevented and corrected if called to the court's attention. As in other waiver cases, we hope to reduce the number of errors committed in the first instance and preserve the judicial

6

resources otherwise used to correct them." (*Scott*, *supra,* 9 Cal.4th at p. 353.)  Here, had defendant raised the 2011 minimum fine amount below, the trial court could have corrected any error in the amount of the fine.  Because she did not, she may not challenge the fine on appeal.

## DISPOSITION

The judgment is affirmed.

                                                       DUARTE         , J.

We concur:

        RAYE         , P. J.

        BUTZ         , J.