Filed 9/26/13

<u>CERTIFIED</u> <u>FOR</u> <u>PARTIAL</u> <u>PUBLICATION</u>*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yuba)

----

| | |
|---|---|
| THE PEOPLE, | C072168 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF12225) |
| v. | |
| JASON EDWARD SIEVERT, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Yuba County, Scrogin, Judge. Affirmed.

Bradley A. Bristow, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Senior Assistant Attorney General, Eric L. Christoffersen, Deputy Attorney General, John G. McLean, Deputy Attorney General, for Plaintiff and Respondent.

---

* Pursuant to California Rules of Court, rule 8.110, this opinion is certified for publication with the exception of part II of the Discussion.

1

Defendant Jason Edward Sievert was found guilty of resisting a police officer. He appeals the judgment based on the absence of a sua sponte jury instruction on the defense of unconsciousness and ineffective assistance of counsel relating to evidence of some of defendant's prior convictions. Finding no merit in either argument we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In May 2012 police responded to a report made by defendant's mother of a disturbance involving defendant. Because defendant failed to comply with the officers' demands, the officers "tased" him. Upon being tased, defendant fell "directly backwards, stiff as a board." Following the tasing, the officers attempted to restrain defendant, but he punched, kicked, and whipped back and forth. Once defendant was restrained, the officers discovered that defendant had sustained a head wound. He was taken to the hospital where he received several staples in his head.

Defendant was charged with two counts of resisting an executive officer and one count of resisting a peace officer. His defense was that he "was knocked out" and therefore did not possess the will or knowledge necessary to commit the crimes. Defendant neither requested nor received an instruction on the defense of unconsciousness from the trial court.[1]

---

[1] Because the trial court used CALJIC instructions, the relevant instructions for unconsciousness would have been CALJIC Nos. 4.30 (unconsciousness) and 4.31 (presumption of consciousness). CALJIC No. 4.30 provides that "[a] person who while unconscious commits what would otherwise be a criminal act, is not guilty of a crime. [¶] This rule of law applies to persons who are not conscious of acting but who perform acts while asleep or while suffering from a delirium of fever, or because of an attack of [psychomotor] epilepsy, a blow on the head, the involuntary taking of drugs or the involuntary consumption of intoxicating liquor, or any similar cause. [¶] Unconsciousness does not require that a person be incapable of movement. [¶] Evidence has been received which may tend to show that the defendant was unconscious at the time and place of the commission of the alleged crime for which [he] [she] is here on trial. If, after a consideration of all the evidence, you have a reasonable doubt that the defendant was conscious at the time the alleged crime was committed, [he] [she] must be found not guilty."

One issue before trial concerned use of defendant's prior convictions to impeach him should he testify.  Although the trial court was "inclined to allow" the evidence, it deferred a final decision until a later date due to confusion about specific aspects of the convictions.  At no time before or during trial did defense counsel make a motion to exclude or sanitize the evidence.  In fact, defense counsel elicited the information herself from defendant on the stand.

On August 8, 2012, the jury returned a verdict finding defendant guilty of all three counts.

Defendant timely appealed the judgment.

DISCUSSION

I

*Defendant Was Not Entitled To A Sua Sponte Instruction On Unconsciousness*

Defendant contends the trial court erred in failing to instruct the jury on the defense of unconsciousness.  We disagree.

"[T]he sua sponte duty to instruct on all material issues presented by the evidence extends to defenses as well as to lesser included offenses . . . .  In the case of defenses, . . . a sua sponte instructional duty arises 'only if it appears that the defendant is relying on such a defense, or if there is substantial evidence supportive of such a defense and the defense is not inconsistent with the defendant's theory of the case.' " (*People v. Breverman* (1998) 19 Cal.4th 142, 157, italics deleted.)  This rule does not apply to all types of defenses, however.  Where a trial court has given complete and accurate instructions on the mental element of the crime charged, it does not have a sua sponte

_____

CALJIC No. 4.31 provides that "[i]f the evidence establishes beyond a reasonable doubt that at the time of the commission of the alleged crime the defendant acted as if [he] [she] were conscious, you should find that [he] [she] was conscious, unless from all the evidence you have a reasonable doubt that the defendant was in fact conscious at the time of the alleged crime.  [¶]  If the evidence raises a reasonable doubt that the defendant was in fact conscious, you must find that [he] [she] was then unconscious."

3

duty to instruct on defenses that, unlike true affirmative defenses, operate only to negate the mental state element of the crime. (*People v. Lawson* (2013) 215 Cal.App.4th 108, 117; *People v. Anderson* (2011) 51 Cal.4th 989, 996-999.) We review contentions of failure to instruct de novo. (*People v. Martin* (2000) 78 Cal.App.4th 1107, 1111.)

"Unconsciousness . . . is a complete defense to a criminal charge" (*People v. Halvorsen* (2007) 42 Cal.4th 379, 417; Pen. Code, § 26, par. Five), but not an affirmative defense in the sense that it operates independently of the elements of the crime. Rather, unconsciousness "negates the elements of voluntariness and intent." (*People v. Babbitt* (1988) 45 Cal.3d 660, 693.) As such, unconsciousness, like the defense of accident addressed in *Anderson* and mistake of fact addressed in *Lawson*, does not necessitate sua sponte instruction from the court even if the traditional standard for sua sponte instruction is met.

Here, it is undisputed that defendant failed to request an instruction on unconsciousness. It is also undisputed that the trial court's instructions on the mental element of the crime charged were complete and accurate. As a result, despite his testimony that he was "knocked out" after sustaining a head wound that sent him to the hospital, the trial court was not required to give the unconsciousness instruction sua sponte.

## II

### *Ineffective Assistance Of Counsel*

Defendant states two bases for his ineffective assistance of counsel claim. First, he claims defense counsel's failure to object to the introduction of the prior conviction evidence for impeachment constituted ineffective assistance. Second, he claims defense counsel was deficient for eliciting the prior conviction evidence from him on the stand at trial. We disagree.

To demonstrate ineffective assistance of counsel, " 'a defendant must show that counsel's performance was inadequate when measured against the standard of a

4

reasonably competent attorney, and that counsel's performance prejudiced [the] defendant's case in such a manner that his representation "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." ' " (*People v. Brodit* (1998) 61 Cal.App.4th 1312, 1333.) " 'In determining whether counsel's performance was deficient, a court must in general exercise deferential scrutiny [citation]' . . . . " " 'Although deference is not abdication . . . courts should not second-guess reasonable, if difficult, tactical decisions in the harsh light of hindsight.' " (*Id.* at p. 1335.)

Here, defendant first asserts, "there is no satisfactory explanation for defense counsel's failure to object. There is no reasonable tactical decision counsel [*sic*] in not objecting to the prosecution's announced intent to impeach [defendant] with his unduly prejudicial prior misdemeanor convictions." We disagree. The record clearly shows that there was confusion concerning the specifics of the priors. Contrary to defendant's assertion, it was reasonable for defense counsel to wait until the relevant facts about the prior convictions were known before objecting.

Defendant also maintains that "[t]here is no satisfactory explanation for why defense counsel would voluntarily elicit prior convictions that should have been kept out or sanitized because they were unduly prejudicial." In response, the People argue that the record is insufficient to determine with certainty whether defense counsel's actions were deficient for having no possible tactical basis. We agree with the People.

As the People point out in their brief, there are a number of possible explanations for defense counsel's elicitation of defendant's priors. One possibility is that the issue of the prior misdemeanors, having been brought up but not resolved pre-trial on the record, was addressed later off the record. At that point defense counsel might have objected pursuant to Evidence Code section 352 that the evidence would unduly prejudice

5

defendant.[2]  The prosecution might have countered that not allowing the evidence would cloak defendant in a "false aura of veracity."  (*People v. Beagle* (1972) 6 Cal.3d 441, 453.)  Knowing that *People v. Wheeler* (1992) 4 Cal.4th 284 only allows use of prior misdemeanor conduct and not the conviction itself, the trial court might have concluded that there could be no meaningful sanitation of the evidence.  At the same time the court might have also concluded that wholesale exclusion of the priors would indeed cloak defendant in a "false aura of veracity."  (*People v. Beagle*, *supra*, 6 Cal.3d at p. 453.)  Weighing the arguments the trial court might reasonably have allowed introduction of the priors as impeachment evidence.  As a result, defense counsel might reasonably have concluded her best option was to introduce the evidence before the prosecution to better control the manner of its introduction.  Thus, the record as it stands is inadequate for determining what defense counsel's motivations were at trial.

## DISPOSITION

The judgment is affirmed.


                                ROBIE              , Acting P. J.

We concur:


        DUARTE        , J.



        HOCH         , J.

---

**2**        Evidence Code section 352 provides:  "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."