Filed 11/6/25  P. v. Smith CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JOHNNY EARL SMITH,<br><br>    Defendant and Appellant. | B340544<br><br>(Los Angeles County<br>Super. Ct. No. SA108631) |

APPEAL from a judgment of the Superior Court of Los Angeles County, William L. Sadler, Judge.  Affirmed as modified.

Karyn H. Bucur, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Seth P. McCutcheon and Chelsea Zaragoza, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \*

Johnny Earl Smith (defendant) argues that substantial evidence does not support his conviction for felony vandalism (Pen. Code, § 594).  Because ample evidence supports the jury's finding that he maliciously destroyed property, we affirm.  However, we order that the abstract of judgment be corrected to reflect the sentence actually imposed.

## FACTS AND PROCEDURAL BACKGROUND

### I.     Facts

Just after 6 a.m. on the morning of July 27, 2023, defendant was released from Santa Monica jail and told he could retrieve his property from the Santa Monica Police Department's property room.  At that early hour, the Department was not yet open.  Around 6:30 a.m., defendant started banging on the Department's glass front door with his hand wrapped in clothing.  Two officers grabbing a morning coffee approached defendant, explained that the property room would not open until 8 a.m., and urged him to be patient.  He responded by calling them "'faggots,'" "hurl[ing] profanity," and "threaten[ing] to . . . smash more property."  One of the officers cautioned defendant against doing so, warning him it might result in him going to jail.  After the officers left, defendant continued screaming and cussing.  Just before 7 a.m., he picked up a "chunk of concrete" from a nearby damaged wall and threw it at the glass door.  The door shattered.  When officers came out to investigate, they found

2

defendant standing with his arms out in front of him, wrists together, in a position ready to be handcuffed. The entire incident was recorded on video.

The damage to the door cost $6,153 to repair.

## II.    Procedural Background

The People charged defendant with vandalism causing more than $400 in damage. (Pen. Code, § 594, subds. (a) & (b)(1).)[1]

The matter proceeded to a jury trial.

Defendant took the stand. He admitted throwing a "rock" at the police station, but stated what he did was "fair" and not "unlawful" because the police had "kidnapped" his "property," leaving him "desperate" and "scared." While acknowledging that he called the officers names, screamed profanity, and "looked angry" on the video, defendant maintained he was not angry and just had a "mean looking face." On cross examination, defendant admitted to picking up a computer while at a bank and slamming it on the ground because the bank had confiscated his debit card and he also admitted to throwing a "piece of brick" at a different police station because the police had harassed him and taken his property; defendant insisted he had "never destroyed property out of anger."

The jury found defendant guilty of vandalism and found true the allegation that the damage exceeded $400.

---

[1]    All further statutory references are to the Penal Code unless otherwise indicated.

3

The trial court sentenced defendant to two years in county jail.[2]

Defendant filed this timely appeal.

## DISCUSSION

Defendant argues that his vandalism conviction must be reversed because there was insufficient evidence that defendant "maliciously" damaged or destroyed the glass door of the police station. We apply the substantial evidence standard of review. (See *People v. Sifuentes* (2022) 83 Cal.App.5th 217, 233-234.) In so doing, we view the evidence in the light most favorable to the jury's finding, drawing all reasonable inferences in support of that finding. (*People v. Kraft* (2000) 23 Cal.4th 978, 1053-1054.) Our task is to determine whether any rational trier of fact could have made the same determination beyond a reasonable doubt. (*People v. Vargas* (2022) 84 Cal.App.5th 943, 951.) Because "'we *must* begin with the presumption that the evidence . . . *was* sufficient,'" it is defendant, as the appellant, who "'bears the burden of convincing us otherwise.'" (*People v. Hamlin* (2009) 170 Cal.App.4th 1412, 1430.) Reversal on a substantial evidence ground "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conclusion of the trier of fact].'" (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

To convict a defendant of vandalism, the prosecution must prove that the defendant (1) "maliciously" damaged or destroyed

---

[2] The abstract of judgment and minute order from the sentencing hearing incorrectly reflect a sentence of two months.

real property, and (2) did not own that property.[3] (§ 594, subd. (a); see CALCRIM No. 2900.)  A defendant acts "maliciously" if he acts with (1) malice *in fact*—that is, if he possesses "a wish to vex, annoy, or injure another person" (§ 7, subd. (b)(4)) or acts with "actual ill will or intent to injure" (*In re V.V.* (2011) 51 Cal.4th 1020, 1028; *People v. Kurtenbach* (2012) 204 Cal.App.4th 1264, 1282), or (2) malice *in law*—that is, if he acts with "an intent to do a wrongful act" (§ 7, subd. (b)(4)), which can be "presumed" or "implied" from the "destruction of another's property," and he does so "without justification or excuse or mitigating circumstances" (*In re V.V.*, at p. 1028; *People v. Moore* (2018) 19 Cal.App.5th 889, 895).  Because the word "malicious" in this context merely denotes a "deliberate and intentional act, as distinguished from an accident or unintentional . . . act" (*People v. Atkins,* 25 Cal.4th 76, 88), vandalism remains a general intent crime (*Moore*, at pp. 894-896; *Atkins*, at pp. 85-86).

Substantial evidence supports the jury's finding that defendant maliciously damaged the door.

Substantial evidence supports a finding that defendant acted with "actual ill will" from "a wish to vex" or "annoy." Defendant cussed at the officers who asked him to be patient, called them hateful names, threatened to smash the door, and continued to scream before making good on his threat and smashing the door.  This constitutes ill will and an intent to vex or annoy members of the police department.  Defendant insists that he acted out of fear or desperation, not anger.  But the jury was within its rights to reject defendant's testimony as not

---

[3]     Vandalism includes maliciously damaging the real property of a public entity such as a police department.  (§ 594, subd. (a); Gov. Code, § 811.2.)

credible, which is precisely what the prosecutor had urged the jury to do. We cannot gainsay the jury's credibility finding.

Substantial evidence also supports a finding that defendant acted with the intent to do a wrongful act. The destruction of another's property is *presumed* to be wrongful. What is more, defendant was specifically warned in advance it would be wrongful, and, by offering up his wrists to be cuffed, subsequently acknowledged that he knew what he had done was wrongful. There was also no justification for his act of vandalism. Defendant testified that he was effectively acting in defense of his property, but that defense does not apply where there is no threat of imminent harm to the property (see CALCRIM No. 3476), and does not in any event justify an act of vandalism (see *People v. Bonilla* (2018) 29 Cal.App.5th 649, 655 [self-help repossession is not permissible if it results in "a breach of the peace"]).[4]

Defendant more generally asserts that he had justifiable motives for what he did—namely, that it was "fair" for him to destroy the Police Department's door because the police "took [his] means of taking care of himself" and were "harassing him." Because his acts were malicious, his "'motives provide[] no defense.'" (*People v. Petronella* (2013) 218 Cal.App.4th 945, 954.)

\* \* \*

The trial court orally sentenced defendant to a term of two *years* in county jail, but the abstract of judgment reflects a sentence of two *months*. Because the oral pronouncement

---

4      To the extent defendant is arguing that he made a "mistake of fact," the issue is forfeited on appeal because he did not request a mistake of fact instruction and because a trial court has no sua sponte duty to provide such an instruction. (*People v. Lawson* (2013) 215 Cal.App.4th 108, 117.)

of sentence controls (*People v. Mitchell* (2001) 26 Cal.4th 181, 185), the abstract must be corrected to reflect the sentence imposed.

## DISPOSITION

The trial court is ordered to correct the abstract of judgment to reflect a sentence of two years in county jail. The court is further ordered to forward a copy of the corrected abstract of judgment to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, P. J.
HOFFSTADT


We concur:


_____, J.
BAKER


_____, J.
MOOR

7