Filed 2/11/15  P. v. Avina CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>RAFAEL AVINA, JR.,<br><br>    Defendant and Appellant. | F067589<br><br>(Super. Ct. No. 1411964)<br><br>**OPINION** |

### THE COURT*

APPEAL from a judgment of the Superior Court of Stanislaus County. Thomas D. Zeff, Judge.

Richard M. Doctoroff, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Lewis A. Martinez and Amanda D. Cary, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

*Before Gomes, Acting P.J., Kane, J. and Peña, J.

## INTRODUCTION

Defendant Rafael Avina, Jr., was convicted of evading a peace officer, unlawful taking of a vehicle, and receiving stolen property. On appeal, he contends the trial court committed prejudicial error by failing to instruct the jury on mistake of fact pursuant to CALCRIM No. 3406 because defendant believed he had consent to drive the car and did not know it was stolen. Further, he contends trial counsel was ineffective for failing to request the instruction and for failing to argue a mistake of fact. We are not persuaded and will affirm the judgment.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

On the afternoon of December 6, 2009, David Kernazitskas and his family left their secured Ceres home for an overnight trip. When Kernazitskas returned on the evening of December 7, he noted several oddities: a garage light left on, damaged doors, lawn equipment out of place, and debris on the garage floor. Also missing from the garage was a 2002 Volvo sedan. Kernazitskas called police. Once the home was cleared, Kernazitskas realized several items were missing from inside the home, including the following: a .22-caliber rifle, a pellet gun, a hunting knife, a big screen television and a smaller television, a laptop computer, a Nintendo Wii game console and several games, DVDs, a jewelry box containing jewelry and the family pet's dog tags, and silver chess pieces. Also taken from inside the home were the keys to the Volvo sedan that were stored in a cupboard in the laundry room. No one had consent to drive the family's Volvo sedan. The next day, Kernazitskas was contacted by police and advised the family's vehicle and several items believed to have been taken from inside the home had been recovered.

After Kernazitskas's report, Ceres police were on the lookout for the stolen vehicle. Later that same evening, Officer Freddy Ortiz, Jr., saw a vehicle matching the description of the stolen Volvo sedan parked in a driveway in front of a home in Modesto. The driver's side door was open and an individual was partially inside the vehicle. The officer could not discern whether that individual was a man or a woman.

2.

Ortiz slowly drove by, awaiting a response from dispatch about whether the license plate on that vehicle matched the stolen Volvo's. As he did so, the individual walked away from the sedan and toward the house. Ortiz circled the block; as he made his second pass, he noted no individuals present outside the home. Dispatch then confirmed the license plate matched that associated with the stolen vehicle. Ortiz pulled his patrol vehicle over around the corner, asking other officers to set up a perimeter.

As officers deployed to the area in response to Ortiz's request, Officer Greg Yotsuya radioed that the Volvo sedan had just passed him. A pursuit then ensued and the Volvo eventually crashed into a fence in a nearby alley. The driver, later identified as defendant, tried unsuccessfully to climb out of the vehicle. Defendant's leg or foot was wedged between the steering wheel and the driver's side seat or door, thwarting his escape.

Numerous items taken from the Kernazitskas residence or their vehicle were found inside the Modesto home or inside a trailer on the same property.

Defendant was charged with evading a peace officer (Veh. Code, § 2800.2, subd. (a)), unlawful taking of a vehicle (*id.*, § 10851, subd. (a)), and receiving stolen property (Pen. Code, § 496d, subd. (a)). A number of enhancements were also alleged. Defendant was convicted of all charges following a jury trial. After admitting certain enhancements, defendant was sentenced to a total prison term of five years eight months.

## DISCUSSION

### *Claim of Instructional Error*

Defendant complains the trial court had a sua sponte duty to instruct the jury on mistake of fact pursuant to CALCRIM No. 3406 because it was his position at trial that he did not know the Volvo sedan was stolen.

A court must instruct the jury on all general principles of law necessary to properly perform its function: "'"It is settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence. [Citations.] The general principles of law governing the

3.

case are those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case."'" (*People v. Breverman* (1998) 19 Cal.4th 142, 154.) The trial court's sua sponte instructional duty includes the obligation to instruct the jury with any affirmative defense supported by substantial evidence, provided the defense is not inconsistent with the defendant's theory of the case. (*People v. Salas* (2006) 37 Cal.4th 967, 982; *Breverman*, *supra*, at p. 157.)

Even assuming there was sufficient evidence to support an instruction on the defense of mistake of fact as defendant argues here, an argument substantially similar to his was rejected by the Supreme Court in *People v. Anderson* (2011) 51 Cal.4th 989, 997–998. There, the court held trial courts have no duty to instruct sua sponte on a defense that serves only to negate the mental state element of the crime if the jury is otherwise properly instructed on the mental state required to commit the crime. The Supreme Court explained,

> "'"when a defendant presents evidence to attempt to negate or rebut the prosecution's proof of an element of the offense, a defendant is not presenting a special defense invoking *sua sponte* instructional duties. While a court may well have a duty to give a 'pinpoint' instruction relating such evidence to the elements of the offense and to the jury's duty to acquit if the evidence produces a reasonable doubt, such 'pinpoint' instructions are not required to be given *sua sponte* and must be given only upon request."'" (*People v. Anderson*, *supra*, at pp. 996–997; see *People v. Saille* (1991) 54 Cal.3d 1103, 1117.)

While *Anderson* involved the defense of accident, its reasoning was applied to the mistake of fact defense and "any other defense that operates only to negate the mental state element of the crime" in *People v. Lawson* (2013) 215 Cal.App.4th 108, 117. In *Lawson*, the defendant was found guilty of petty theft with priors after stealing a $20 hooded sweatshirt from a retail store. (*Id*. at p. 111.) On appeal, the defendant argued the jury could have reasonably inferred he simply forgot about the sweatshirt, which he had draped over his shoulders before paying for the other items and leaving the store. Therefore, he argued the trial court should have instructed sua sponte on the defense of mistake of fact. (*Id*. at p. 118.) The Court of Appeal agreed the evidence supported a

reasonable inference the defendant had forgotten about the sweatshirt. However, because this defense amounted to no more than a claim he took the item without intending to steal it and thus served only to negate the mental state required to commit the crime, the court found the theft by larceny instructions given—"'[w]hen the defendant took the property, he intended to deprive the owner of it permanently'"—sufficient to address such a defense. (*Ibid*.) "Like the defense of accident, an instruction on the defense of mistake of fact would have served only to negate the mental state element of the crime." "Thus, even if substantial evidence supported an instruction on mistake of fact, the trial court had no duty to instruct on the defense sua sponte." (*Ibid*.)

Here, the jury was instructed with CALCRIM Nos. 1750[1] and 1820,[2] respectively addressing receiving stolen property and unlawfully taking a vehicle. Both addressed the required mental state for those crimes. Moreover, the jury was also instructed with CALCRIM No. 376 as follows:

---

[1]CALCRIM No. 1750 states:

"The defendant is charged in count three with receiving stolen property.

"To prove that the defendant is guilty of this crime, the People must prove that:

"1. The defendant aided in concealing or withholding from the owner property that had been stolen;

"AND

"2. When the defendant aided in concealing or withholding the property from the owner, he knew that the property had been stolen.

"Property is *stolen* if it was obtained by any type of theft."

[2]CALCRIM No. 1820 provides as follows:

"The defendant is charged in count two with unlawfully driving a vehicle.

"To prove that the defendant is guilty of this crime, the People must prove that:

"1. The defendant drove someone else's vehicle without the owner's consent;

"AND

"2. When the defendant did so, he intended to deprive the owner of possession or ownership of the vehicle for any period of time."

5.

"If you conclude that the defendant knew he possessed property and you conclude that the property had in fact been recently stolen, you may not convict the defendant of auto theft and receiving stolen property based on those facts alone. However, if you also find that supporting evidence tends to prove his guilt, then you may conclude that the evidence is sufficient to prove he committed auto theft and receiving stolen property.

"The supporting evidence need only be slight and need not be enough by itself to prove guilt. You may consider how, where, and when the defendant possessed the property, along with any other relevant circumstances tending to prove his guilt of auto theft and receiving stolen property.

"Remember that you may not convict the defendant of any crime unless you are convinced that each fact essential to the conclusion that the defendant is guilty of that crime has been proved beyond a reasonable doubt."

Defendant's defense—that he did not know the Volvo was a stolen vehicle, and that he evaded police because his driving privilege was suspended—"served only to negate the mental state[s]" required to commit the crimes of receiving stolen property and unlawful taking of a vehicle. (*People v. Lawson*, *supra*, 215 Cal.App.4th at p. 118.) Moreover, the court's other instructions sufficiently addressed defendant's defense. Therefore, the trial court was not required to sua sponte instruct the jury on the mistake of fact defense.

*People v. Russell* (2006) 144 Cal.App.4th 1415, upon which defendant relies, does not require a different result. In that case, the defendant testified he found a 1982 Yamaha motorcycle abandoned in a parking lot; the motorcycle, however, had been reported stolen. (*Id*. at pp. 1420-1421.) Defendant believed the motorcycle had been abandoned for a number of reasons, including its condition, the fact it had not been registered for nearly two years, and the fact it was found sitting next to trash dumpsters behind a Cycle Gear store. (*Id*. at pp. 1421-1422.) The *Russell* court held the defendant was entitled to a sua sponte mistake of fact instruction based on evidence he believed the motorcycle he stole had been abandoned: "[I]nstructions on the applicable defenses would have been more valuable to the jury than instructions regarding the elements of the offense." (*Russell*, at p. 1433.) However, as the *Lawson* court observed, "[I]n the wake

of *Anderson* …, *Russell* … is apparently no longer good law *to the extent it held that the trial court had a duty to instruct sua sponte on the defense of mistake of fact.*"  (*People v. Lawson*, *supra*, 215 Cal.App.4th at p. 118.)

Finally, even assuming the court did have a sua sponte duty to instruct the jury with CALCRIM No. 3406, the error was harmless.[3]  "An erroneous failure to instruct on mistake of fact is reversible error only if it is reasonably probable that the giving of the instruction would have produced a result more favorable to the defendant. [Citation.]" (*People v. Zamani* (2010) 183 Cal.App.4th 854, 866; see *People v. Watson* (1956) 46 Cal.2d 818, 836.)  No such reasonable probability exists here for several reasons.  First, the mistake of fact or a lack of knowledge evidence was weak; it pertained only to the condition of the vehicle.  Second, the evidence inferring defendant's knowledge that the vehicle was stolen was comparatively strong.  Defendant led police on a chase within five minutes of Officer Ortiz spotting the stolen vehicle in front of the residence in Modesto.  Third, the jury was fully and properly instructed regarding the People's burden of proving defendant's specific intent or mental state beyond a reasonable doubt.  In light of these circumstances, and the fact the sole purpose of the mistake evidence was to attempt to negate the mental state elements of the charged offenses, we conclude it was not reasonably likely that giving a mistake instruction would have resulted in a more favorable outcome for defendant.

To conclude, with respect to both the unlawful taking or driving of a vehicle and receiving stolen property counts, the jury was fully instructed that the prosecution was required to prove defendant knew the vehicle was stolen.  Thus, no additional sua sponte instruction as to the defense of mistake was required.  (*People v. Anderson*, *supra*, 51 Cal.4th at pp. 997–998.)

---

[3]We reject defendant's contention that the trial court's failure to instruct should be reviewed under the *Chapman* standard.  (*Chapman v. California* (1967) 386 U.S. 18, 24.)

*Ineffective Assistance of Counsel*

In a related argument, defendant contends defense counsel provided ineffective assistance of counsel by failing to request CALCRIM No. 3406 and by failing to argue mistake of fact to the jury.

To prevail on an ineffective assistance of counsel claim, the appellant must establish two things:  (1) counsel's performance fell below an objective standard of reasonableness, and (2) that prejudice occurred as a result.  (*Strickland v. Washington* (1984) 466 U.S. 668, 687; *People v. Hernandez* (2012) 53 Cal.4th 1095, 1105; *People v. Bradley* (2012) 208 Cal.App.4th 64, 86–87.)  The *Strickland* court explained that prejudice is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  (*Strickland v. Washington*, *supra*, at p. 694.)  Further, the high court stated that "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceeding.  (*Ibid*.)

"'"Reviewing courts will reverse convictions [on direct appeal] on the ground of inadequate counsel only if the record on appeal affirmatively discloses that counsel had no rational tactical purpose for [his or her] act or omission."'  [Citation.]" (*People v. Lucas* (1995) 12 Cal.4th 415, 437.)  If the record on appeal "'"sheds no light on why counsel acted or failed to act in the manner challenged[,] … unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation," the claim on appeal must be rejected,'" and the "claim of ineffective assistance in such a case is more appropriately decided in a habeas corpus proceeding." (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266-267.)

Specifically, defendant asserts "there could be no possible reason why [defense] counsel would knowingly want the jury to fail to consider appellant's legal defense of mistake," and that the "failure to frame [his] lack of knowledge in the context of mistake of fact deprived that jury of instruction on an appropriate defense."

Assuming for the sake of argument defense counsel should have requested an instruction regarding mistake of fact, defendant has not been prejudiced by that failure.

8.

(*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1126 ["'"a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies"'"].)

Other instructions adequately covered the purported mistake of fact: that defendant had no reason to believe the vehicle was stolen. As we have already explained, the trial court properly instructed the jury with CALCRIM Nos. 376, 1750, and 1820 addressing the mental state element of the crimes of receiving stolen property and unlawful taking of a vehicle. Both counts required the jury to conclude defendant knew the Volvo sedan was stolen. Additional instructions would have been redundant, perhaps even confusing. The essence of the mistake was effectively encompassed in the court's other instructions. (See *People v. Anderson*, *supra*, 51 Cal.4th at pp. 997–998; *People v. Lawson*, *supra*, 215 Cal.App.4th at p. 111.)

By virtue of returning guilty verdicts, the jury necessarily rejected defendant's mistake of fact defense. There was plenty of evidence to support the jury's findings. While, as defense counsel argued, there may not have been any direct evidence tying defendant to the Modesto home, its occupants, or the other stolen items recovered there, there was circumstantial evidence of such a nexus. When Officer Ortiz spotted a Volvo sedan in the driveway matching the description of the stolen vehicle, there was an individual partially inside it. As the officer slowly drove past the house, that individual stepped away from the vehicle and turned toward the house. The officer circled the block, making a second pass; no one was outside on that occasion. He then parked his marked patrol car around the corner, asking other officers to set a perimeter in the area after dispatch confirmed a match. He believed it was possible the vehicle would be moved because the individual had spotted the patrol car. As officers responded to Officer Ortiz's call, Officer Yotsuya reported the Volvo sedan had just passed his position. No more than five minutes had passed between Ortiz's initial observation and the Volvo passing by Yotsuya's position. The vehicle crashed into a nearby fence after a brief pursuit. Defendant was the vehicle's sole occupant. Circumstantially speaking, there

was significant evidence from which a jury could conclude that defendant knew the Volvo was stolen.

Nor do we necessarily agree defense counsel failed to argue the asserted mistake of fact. While counsel may not have used the phrase "mistake of fact," his closing argument did address the "big issue … [of] whether or not [defendant] knew that the vehicle was stolen." Counsel specifically referenced the evidence that supported an inference that defendant had no such knowledge: "The ignition wasn't punched. The stereo wasn't stolen. The car was in fine shape. The keys were in the car." Counsel repeated those facts and emphasized the lack of direct evidence that defendant "was inside of [the Modesto residence] or with these people who were inside [the home] where the property was found. There is no evidence that [defendant] was in the trailer in the back of the property that was at [the home] where property, again, was found …. [¶] [T]here is no direct evidence of what [defendant] knew about this vehicle and that's critical." Thus, a mistake of fact by defendant was implied in defense counsel's closing argument.

For the foregoing reasons, it is not reasonably probable that had counsel requested CALCRIM No. 3406 and expressly argued defendant's mistake of fact to the jury that the result would have been different. (*Strickland v. Washington*, *supra*, 466 U.S. at p. 694.)

**DISPOSITION**

The judgment is affirmed.