Filed 9/18/15  P. v. Sweis CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>SAMIR SWEIS,<br><br>     Defendant and Appellant. | D066832<br><br><br>(Super. Ct. No. SCD254666) |

APPEAL from a judgment of the Superior Court of San Diego County, Louis R. Hanoian, Judge.  Affirmed.

Jill Kent, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina and Parag Agrawal, Deputy Attorneys General, for Plaintiff and Respondent.

Samir Rammy Sweis appeals a judgment following his jury conviction of arson of an inhabited structure (Pen. Code, § 451, subd. (b))[1] and arson of personal property

---

[1]    All statutory references are to the Penal Code.

(§ 451, subd. (d)).  He pleaded guilty to the charge of burglary (§ 459).  On appeal, he contends the trial court prejudicially erred by refusing to instruct on self-defense to the arson charges.

FACTUAL AND PROCEDURAL BACKGROUND

In April 2014, Sweis was dating Annalise Valdez and sometimes shared a room with her in a home in which she lived with Juana Cervantes and Elizabeth Perez.  Sweis used drugs and had recently overdosed on heroin.

On April 9, Sweis and Valdez were screaming and arguing in their bedroom.  Cervantes's daughters, Elizabeth Gurule (Elizabeth) and Yahaira Gurule (Yahaira), heard the argument.  Elizabeth thought Sweis was acting crazy, like he was on drugs.  Valdez packed Sweis's property into a suitcase and threw it outside.

Sweis locked himself in the bathroom adjoining Valdez's bedroom.  Valdez stated she would get someone to help force him out of the house and then she left the house.  Elizabeth believed Sweis was doing drugs inside the bathroom and told him to leave the house or she would call the police.  Sweis yelled obscenities at Cervantes and threatened her.  Yahaira called her child's father, Ernesto, who arrived, picked up their child and another child, and left with them.  Ernesto did not go into Valdez's bedroom.  While Sweis was locked inside the bathroom, one or two of Valdez's friends arrived and tried to get him to leave the bathroom.  He would not leave.  Yahaira called the police and went outside.

Cervantes saw Sweis lighting his clothes on fire and throwing something on the mattress.  Elizabeth saw him playing with paper that was on fire and laughing.  Sweis

2

threw the burning paper on the floor.  Elizabeth saw the floor, bed, and wall were on fire and saw Sweis trying to light himself on fire.  Perez threw water on the burning paper to put it out.  A neighbor saw Sweis throw a lit piece of paper out the window.

When San Diego Police Officers Cory Ohlwiler and Leann Rager arrived at the scene, Elizabeth was outside and told them Sweis was inside lighting the house on fire. The officers could see smoke coming out of the house.  Entering the house, the officers saw the bedroom floor was wet and Sweis was alone in the bedroom.  The bed and other objects were on fire.  They ordered Sweis out of the room, but he initially did not comply. When Rager stated her observation the house was on fire, Sweis replied, "The house is on fire.  Yeah."  He then laughed.

Sweis was detained and Rager found a lighter in his pocket.  He was transported to a hospital because of possible smoke inhalation and a cut under his lip.  His left cheek was swollen.  His hands had blisters and burn marks.

San Diego Fire Captain Eric Kelley arrived at the scene and saw a charred piece of lined paper outside, by the window.  The origin of the fire was inside the bedroom at the foot of the bed.  There was a large amount of burnt debris and clothes with charring on them.  There was also fire damage to a computer and a trash bin.  The bedroom wall was burnt and the ceiling had smoke damage.  Kelley determined the cause of the fire was an open flame, meaning a flame came into direct contact with material that was ignited.  A lit lighter is an open flame.  Although a single piece of lit paper could possibly have started the fire, it was not probable that happened.

An information charged Sweis with arson of an inhabited structure (count 1) (§ 451, subd. (b)), making criminal threats (count 2) (§ 422), burglary (count 3) (§ 459), and arson of personal property (count 4) (§ 451, subd. (d)). It also alleged that Sweis had one prison prior (§§ 667.5, subd. (b), 668) and that counts 1, 2, and 4 were committed while Sweis was released from custody on bail pending final judgment on an earlier felony (§ 12022.1, subd. b)).

At trial, the prosecution presented evidence substantially as described above. In his defense, Sweis testified he had been a heroin addict for six years and had overdosed on heroin a few days before the incident. However, he testified he had used only marijuana on the day of the incident. On April 9, he argued with Valdez about his drug use. Cervantes became involved, cursing at him, and he cursed back at her. Sweis testified that Ernesto became upset when he cursed at Cervantes, and entered Valdez's bedroom. Sweis became scared because Ernesto was bigger than he and did not have good intentions. Because he was scared, Sweis then locked himself inside the bathroom. He heard Valdez leave to get someone to help make him leave the house. Ernesto banged really hard on the bathroom door for two and one-half minutes and told him to come out. Ernesto told him, "I'm going [to] mess you up." When Ernesto stopped banging on the door and yelling, Sweis, believing he had left the bedroom, opened the bathroom door and walked out. Ernesto hit Sweis in the face, causing him to fall on the floor near the foot of the bed. Ernesto got on top of Sweis, straddling him with his knees on Sweis's abdomen or pelvic area. Ernesto hit Sweis multiple times in the mouth and face. Sweis heard Yahaira talking on the phone with the police and telling Ernesto the police were

4

there. Sweis felt Ernesto about to punch him again, but Ernesto paused in his attack on Sweis. Sweis then reached in his pocket, pulled out his lighter, and lit a couple of pieces of paper (i.e., his bank statement). Sweis held the lit papers just above his beltline, causing Ernesto to feel the heat of the fire. Ernesto got off of Sweis and he (Sweis) threw the lit papers at him. However, the lit papers landed on the bed where there was some clothing. He remembered smelling smoke and thought about putting out the fire, but the police arrived. Sweis denied throwing any burning paper out the window. He testified he did not intend to light either the bed or the clothes on fire. He did not remember telling Ohlwiler he did not recognize the man who attacked him.

Valdez testified for the defense. She testified Sweis continued to use heroin up to and including the day of the incident. When Sweis was under the influence of heroin, he would act cocky and would not think as he would when he was sober. She admitted she and Sweis were arguing on the day of the incident and that Cervantes and Sweis argued about money. Sweis locked himself in the bathroom. Valdez testified Ernesto came to the house after Elizabeth and Yahaira asked him to beat up Sweis. When Ernesto arrived, Sweis was locked in the bathroom and Ernesto argued with him until Valdez left the house. When she returned, the fire in her bedroom had already been extinguished. She admitted she had told officers that when Sweis was in the bathroom, she heard loud noises that sounded like he had fallen.

The jury found Sweis guilty of arson of an inhabited structure (§ 451, subd. (b)) and arson of personal property (§ 451, subd. (d)). It found him not guilty of making a criminal threat (§ 422). He pleaded guilty to burglary (§ 459). The trial court found true

5

the on-bail allegations (§ 12022.1, subd. (b)) and not true the prison prior allegation (§§ 667.5, subd. (b), 668). The court sentenced Sweis to a total of seven years in prison, consisting of a five-year term for his conviction of arson of an inhabited structure and a consecutive two-year enhancement for the on-bail allegation. It also imposed a concurrent two-year term for his burglary conviction and stayed the sentence for his conviction of arson of personal property pursuant to section 654. Sweis timely filed a notice of appeal.

DISCUSSION

I

*Trial Court's Refusal to Instruct on Self-defense*

Sweis contends the trial court prejudicially erred by refusing his request for an instruction on self-defense regarding the two arson counts. He argues the evidence was sufficient to support a finding by the jury that he acted in self-defense when he lit the paper on fire.

A

After Sweis's trial testimony, his counsel informed the court he would be requesting an instruction on self-defense. The court responded that it did not believe self-defense was a defense to arson. Sweis's counsel stated he was unaware of any authority holding that self-defense was a defense to arson. The prosecutor argued self-defense was a defense only for assaultive crimes and not arson. Because Sweis was charged with arson and not with assaulting Ernesto, the court refused his request for an instruction on self-defense.

6

However, the court stated Sweis's theory would be more appropriately covered by an instruction on accident. It explained that instruction would cover an act of lawfully fending off an attacker with fire, during which something catches on fire, and thereby negating the elements of malice and/or willfulness. The court instructed the jury on the defense of accident.

B

To justify an act in self-defense, a defendant generally must have an honest and reasonable belief that bodily injury is imminent. (*People v. Minifie* (1996) 13 Cal.4th 1055, 1064-1065; *People v. Humphrey* (1996) 13 Cal.4th 1073, 1082-1083.) The reasonableness of the belief in the need to defend is determined from the point of view of a reasonable person in the defendant's position. (*Humphrey*, at pp. 1082-1083.) The right of self-defense allows a person to use such force as is reasonable under the circumstances. (*Minifie*, at p. 1065.) In certain cases, the right of self-defense may apply when a person reasonably believes he or she is in imminent danger of either bodily injury or being touched unlawfully (e.g., battery). (CALCRIM No. 3470; *People v. Myers* (1998) 61 Cal.App.4th 328, 335.) The right to use self-defense continues only so long as the danger exists or reasonably appears to exist. (CALCRIM No. 3474.) Therefore, when an attacker withdraws or no longer appears capable of inflicting any injury, the right to use self-defense ends. (CALCRIM No. 3474.)

A trial court has a duty to instruct on a particular defense only if there is substantial evidence to support that defense. (*People v. Salas* (2006) 37 Cal.4th 967, 982 (*Salas*).) In determining whether the evidence is sufficient to support an instruction on a

7

defense, the court does not determine the credibility of the defense evidence, but rather determines whether there is evidence, if believed by the jury, could raise a reasonable doubt on the charged offense. (*Id.* at pp. 982-983.) We review de novo a trial court's refusal to give an instruction. (*People v. Waidla* (2000) 22 Cal.4th 690, 733.)

## C

Sweis argues the trial court erred by refusing his request for an instruction on self-defense to arson because there was substantial evidence to support that instruction. Viewing the evidence favorably to Sweis, the jury could have found he honestly and reasonably believed he needed to act in self-defense when he lit the paper on fire. Sweis testified Ernesto punched him in the face, causing him to fall on the floor. Straddling Sweis with his knees, Ernesto hit him multiple times in the mouth and face. Yahaira was talking on the phone with the police and told Ernesto the police were there. Ernesto was about to punch him again, but paused in his attack on Sweis. Sweis then reached in his pocket, pulled out his lighter, and lit a couple of pieces of paper. He held the lit papers just above his beltline, causing Ernesto to feel the heat of the fire and get off of Sweis. Sweis threw the lit papers at him. However, the lit papers landed on the bed where there were some clothes, causing them to catch on fire. That testimony, if believed by the jury, would have been sufficient to support a finding by the jury that, or at least a reasonable doubt regarding whether, Sweis actually and reasonably believed in the need to defend himself against Ernesto's attack on him and therefore did not have the required mental

8

state for the arson counts (i.e., a willful and malicious act).[2] There was sufficient evidence that Ernesto was in the midst of his assault on Sweis when he (Ernesto) paused and Sweis took that opportunity to defend himself by lighting pieces of paper, holding them near Ernesto's torso, and then throwing them at him.

Contrary to the People's assertion, we do not conclude the evidence, viewed favorably to Sweis, showed Ernesto had stopped his assault on Sweis and the danger of a continued assault had ended. Rather, the evidence, viewed favorably to Sweis, showed Ernesto was still on top of Sweis and had only briefly paused his assault on him when Sweis allegedly acted in self-defense by starting some paper on fire. Based on that evidence, the jury could find that Ernesto had not withdrawn, or otherwise appeared incapable of inflicting any injury on Sweis, when he (Sweis) acted. (CALCRIM No. 3474.)

Although the People argued below, and the trial court found, that self-defense is not a defense to arson, the People do not cite any authority so holding. Instead, the People cite *People v. Hayes* (2004) 120 Cal.App.4th 796, in which the court concluded self-defense excuses or justifies an act, but does not negate the malice element of mayhem. (*Id.* at pp. 802-805.) Because we conclude below the trial court did not prejudicially err in refusing to instruct on self-defense in this case, we need not, and do not, decide whether self-defense is a defense to arson by applying *Hayes*'s reasoning or

---

2      Section 451 states: "A person is guilty of arson when he or she willfully and maliciously sets fire to or burns or causes to be burned . . . any structure . . . ."

9

otherwise. Rather, for purposes of disposing of this appeal, we assume arguendo that self-defense may be a defense to arson. Because there was substantial evidence to support an instruction on self-defense, the trial court erred by refusing Sweis's request for that instruction.

D

Although we assume the trial court erred by refusing an instruction on self-defense, we nevertheless conclude that error was harmless and does not require reversal of Sweis's arson convictions. Contrary to Sweis's assertion, we conclude the California standard for prejudicial error applies to such an instructional error (i.e., the error is harmless unless the defendant shows it is reasonably probable he or she would have obtained a more favorable result absent the error). (*People v. Watson* (1956) 46 Cal.2d 818, 836; *People v. Watt* (2014) 229 Cal.App.4th 1215, 1219 (*Watt*); *People v. Villanueva* (2008) 169 Cal.App.4th 41, 53 (*Villanueva*).) Although the California Supreme Court has yet to expressly decide which standard of prejudice applies when a court errs by failing to instruct on an affirmative defense (see *Salas*, *supra*, 37 Cal.4th at p. 984),[3] the court in *Watt* noted the California Supreme Court and other courts have decided in analogous cases that the *Watson* standard generally applies to instructional errors and no published opinion has applied the federal constitutional standard for prejudicial error under *Chapman v. California* (1967) 386 U.S. 18, 24 (i.e., the error is

---

3    *Salas* stated: "We have not yet determined what test of prejudice applies to the failure to instruct on an affirmative defense." (*Salas*, *supra*, 37 Cal.4th at p. 984.)

10

reversible unless the People show beyond a reasonable doubt the error was harmless). (*Watt, supra*, 229 Cal.App.4th at pp. 1219-1220; cf. *People v. Breverman* (1998) 19 Cal.4th 142, 165 [applying *Watson* standard to error in not instructing on lesser included offense].)  Furthermore, in *Villanueva*, after concluding the trial court erred by refusing to instruct on self-defense, the court stated: "We review an error of misdirection of the jury for a miscarriage of justice, and do not reverse unless it appears reasonably probable that the defendant would have achieved a more favorable result had the error not occurred." (*Villanueva, supra*, 169 Cal.App.4th at p. 53.)  We agree with that line of authority and conclude the *Watson* standard applies to this case in determining whether the trial court's error in refusing to instruct on self-defense was prejudicial.  That instructional error did not deprive him of his right to present a defense or otherwise violate his federal constitutional rights to due process of law and to a jury trial.  He does not cite any precedent so holding or otherwise persuade us the *Chapman* standard should apply.

Applying the *Watson* standard to this case, we conclude Sweis has not carried his burden on appeal to show it is reasonably probable he would have obtained a more favorable verdict had the trial court instructed on self-defense.  Although we are not persuaded by the People's assertion that the jury's rejection of the affirmative defense of accident (on which the trial court instructed) necessarily meant the jury would have rejected an affirmative defense of self-defense, we nevertheless conclude, based on our review of the entire record, that it is not reasonably probable Sweis would have obtained a more favorable verdict had the court instructed on self-defense.  The evidence showed Sweis had been argumentative earlier on the day of the incident.  He had overdosed on

heroin a few days before and likely had taken heroin on the day of the incident. Valdez and others had been attempting to get Sweis to leave the residence that day when he locked himself in the bathroom and refused to leave. The jury could reasonably infer from this evidence that Sweis intentionally and maliciously lit pieces of paper on fire in response thereto and as a continuation of his argumentative and disruptive behavior. Percipient witnesses testified Sweis threw lit pieces of paper out of the window, supporting an inference he was acting maliciously and also contradicting his testimony that he lit only his bank statement on fire and threw it at Ernesto. A videotape from Rager's body camera was played for the jury, showing that after Sweis lit the bedroom on fire, he was laughing and did not attempt to put out the fire. That evidence also supported a reasonable inference by the jury that he acted maliciously when he lit the pieces of paper and started the bedroom fire.

Furthermore, the jury could reasonably conclude Sweis's testimony regarding how the fire was started was not credible. Sweis made previous inconsistent statements, including telling police he did not know the man who allegedly attacked him in the bedroom. Also, on the day of the incident, he did not tell anyone that Ernesto had attacked him.

Based on the entire record, we conclude it is reasonably probable the jury would have rejected Sweis's defense of self-defense had the trial court instructed on that defense. It likely would have concluded he did not actually believe in the need to defend himself or that a reasonable person in his circumstances would not have believed there was a need to defend himself or herself. Also, the fact that the jury rejected Sweis's

12

affirmative defense of accident supports our conclusion the jury also likely would have rejected his theory that he acted in self-defense. Because it is not reasonably probable Sweis would have obtained a more favorable verdict had the trial court instructed on self-defense, we conclude that error was harmless and does not require reversal of his arson convictions. (*People v. Watson*, *supra*, 46 Cal.2d at p. 836; *Watt*, *supra*, 229 Cal.App.4th at p. 1219; *Villanueva*, *supra*, 169 Cal.App.4th at p. 53.)

DISPOSITION

The judgment is affirmed.


McDONALD, J.

WE CONCUR:

HUFFMAN, Acting P. J.

AARON, J.